(C. D. 1766)

PACIFIC CUSTOMS BROKERAGE COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 2, 1956)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel) for the petitioner.
*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the respondent.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a petition, filed under section 489 of the Tariff Act of 1930, for the remission of additional duties assessed because of the undervaluation of certain parts of railroad cars, the property of the Canadian Pacific Railway Co., which cars had previously been exported from the United States to Canada for repairs and then returned to the United States.

Five entries are involved herein, covering six railway vans or cabooses. Said entries were made by petitioner for the account of the Canadian Pacific Railway Co. It appears from the record that, in each case, the original invoice and the entry did not include new wheels and certain other parts installed in the said railway cars or the cost thereof. Thereafter, a customs official at Vanceboro (the port of entry) observed one car of a subsequent shipment and noticed that it had new wheels, new brake shoes, and other parts. He informed the deputy collector in charge and the latter inquired of the broker whether the entered vans had new wheels. Subsequently, but after the merchandise had come under the observation of the appraiser, corrected invoices, listing the wheels and other items, were submitted to the collector. The invoices and the corrected invoices indicate an undervaluation of merchandise as follows:

| Entry No. | Amt. of material, original invoice, Can. currency | Amt. of labor, original invoice, Can. currency | Amt. of material, corrected invoice, Can. currency | Amt. of labor, corrected invoice, Can. currency |
|---|---|---|---|---|
| V 2714 | $42. 77 | $51. 84 | $512. 26 | $64. 88 |
| V 2713 | 42. 77 | 51. 84 | 499. 65 | 64. 88 |
| V 2741 | 42. 77 | 51. 84 | 520. 07 | 64. 88 |
| V 2741 | 42. 77 | 51. 84 | 520. 37 | 64. 88 |
| V 2833 | 42. 77 | 51. 84 | 505. 35 | 64. 88 |
| V 2861 | 42. 77 | 51. 84 | 529. 66 | 64. 88 |

At the trial, Walter L. Blanchard, attorney in fact for the petitioner (a firm of customs brokers), and two employees of the Canadian Pacific Railway Co., Alec Sawyer, district storekeeper, and John W. Sangster, general car foreman, testified for the petitioner. The Government called two customs officials at Vanceboro, Howard E. Pratt, deputy collector, entry clerk, and examiner, and Coleman E. Russell, deputy collector in charge and appraiser.

The following facts appear from the testimony:

The six vans involved herein were exported to the plant of the Canadian Pacific Railway Co. at McAdam, New Brunswick, for conversion from arch bar trucks to solid cast steel truck frames or sides. The instructions in regard thereto originated with an I. C. C. order, from the American Association of Railroads, that arch bar trucks were obsolete and had to be replaced with cast steel truck sides, some of which were 4¼ by 8, and some 5 by 9. When these vans arrived at McAdam, the trucks were taken apart, the arch bars taken off, and the vans equipped with solid steel truck sides. During the course of the work, it was discovered that the truck sides which had been shipped to McAdam were 5 by 9's, requiring wheels with a 5-by-9 journal, but that the trucks under these vans were 4¼ by 8's. Therefore, the wheels were taken off and replaced. In order to do this, certain other parts also had to be changed. All of the replacement material was new, not secondhand. The arch bars that were taken from the vans were scrapped, but the old wheels were put back in stock for further use.

Sangster kept a record of the materials used in the conversion and the labor charges and gave the information to Sawyer, but he did not include the cost of labor and materials in connection with replacing the wheels, because he felt that was simply an exchange and not a part of the conversion program. Sawyer then prepared the original invoices on the basis of the information he received, without inquiring what work had been done. Blanchard, in turn, prepared the entries on the basis of the invoices, without making any investigation as to what repairs had been made.

After customs officials discovered new wheels on one of the vans in a subsequent lot and made inquiry of Blanchard, he called Sangster and asked him what repairs had been made and whether new wheels had been used. Sangster said that new wheels had been put on but that he did not know they were dutiable. Blanchard directed him to prepare corrected invoices to show the value of all materials used. Sangster then prepared new worksheets, from which Sawyer drew up the corrected invoices.

Sawyer explained the omission of the wheels from the original papers as follows:

From what I have heard on this matter, it appears there was some misunderstanding due to the nature of the repairs. In other words, it was a repair that is not normally done. The vans or cabooses came over to be changed to the solid steel truck sides, and the wheels at that time were not considered part of the repairs on account of the wheels that were taken out and new wheels put in to replace them.

In his opinion, replacing the wheels was not a repair, but he conceded that for customs purposes it was so regarded. He explained

that Sangster included on the worksheets the material which he considered dutiable and that he (Sawyer) determined whether or not duty was to be paid from that information. He had no personal knowledge of what work had been done.

Sangster stated that he did not know the wheels had to be included in the cost of repairs, as he considered that new ones had simply been exchanged for old. He said that such exchange was not a part of the conversion job, but he admitted that the additional work done and materials furnished were necessary to make the vans function.

Petitioner's witnesses all testified that there was no intent to defraud the revenue, conceal or misrepresent facts, or deceive the appraiser as to the value of the merchandise. Blanchard stated that he had made other entries on repairs for the Canadian Pacific Railway Co. and that its invoices had given correct information and had not been questioned by the authorities. Deputy Collector Russell testified that, in his opinion, the petitioner and the Canadian Pacific Railway Co. are honest and have a reputation for honesty.

Under section 489 of the Tariff Act of 1930, additional duties assessed for undervaluation of merchandise may be remitted upon satisfactory evidence that such undervaluation was made without any intention to defraud the revenue of the United States, conceal or misrepresent the facts, or deceive the appraiser as to the value of the merchandise. The petitioner has the burden of showing affirmatively that entry was made without such intention. *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487. In the instant case, petitioner contends that the reason for the undervaluation was an inadvertent, unintentional mistake on the part of an employee of the Canadian Pacific Railway Co. and that the failure to report the replacement of the wheels as repairs was an error in judgment on its part, due to a misunderstanding of the customs laws. It is also claimed that there were no facts or circumstances known to petitioner (the customs broker) that would cause a prudent and reasonable person to question the correctness of the invoices and that full disclosure of all material facts within its knowledge and possession was made to customs officials.

The record shows that one of the railway's employees decided, without investigation, that a part of the materials and labor furnished in Canada should not be included as "repairs." The value of the materials and labor omitted greatly exceeded the value of those included. The work or repair was of a type that was not normally done. Although great stress has been laid on the view that the additional work was merely an exchange of wheels and other parts, all of the replacement items were new, not secondhand, and presumably were worth more than the used ones. Under such circumstances, a reasonable and prudent person would have made some inquiry as to

whether or not the items were dutiable. Ignorance of the law cannot be accepted as an excuse. *United States* v. *H. S. Dorf & Co. of Pa., Inc.,* 36 C. C. P. A. (Customs) 29, C. A. D. 392; *United States* v. *Pacific Customs Brokerage Company,* 41 C. C. P. A. (Customs) 4, C. A. D. 521.

A somewhat analogous situation was involved in *Stan Newcomb and Barbara Todd* v. *United States,* 37 C. C. P. A. (Customs) 18, C. A. D. 413, where certain material was taken to a firm in Mexico to be made into trousers. When the completed articles were returned to the United States, they were entered at the cost of the work, although the entrant, Newcomb, knew they were worth more than that. He gave his broker only the tailoring charges, as he believed duty would be assessed on that basis. He did not ask how the merchandise should be entered, nor did his broker make any inquiry of him as to the value of the merchandise. The petition for remission was denied, the court stating (p. 24):

Second, we do not think appellant Newcomb met the burden which the statute imposed upon him by simply testifying that he was lacking in knowledge of the law. See *United States* v. *Dorf & Co.,* 36 C. C. P. A. (Customs) 29, 30, C. A. D. 392. It was incumbent upon him to learn some law, and it may be remarked that he had immediately at hand the means for informing himself—his broker whom he employed to make and who made the first entry on June 17, 1946, and followed up during the succeeding weeks by making all the other entries. Incidentally, the broker is a co-appellant (we assume merely a nominal party) with Newcomb. Surely the broker knew the law governing the statement of valuation in entries of merchandise and could have informed Newcomb if he had sought information—an activity which again and again the courts have declared to be a duty of an importer. It is srpurising that Newcomb made no inquiry, and it is also surprising that the broker did not inform him of the essentials even without being asked to do so. As agent for the importer the broker owed him that service Also, the principal here is responsible for the omissions of his agent.

In the case before us, the petitioner is a firm of customs brokers and the importer of record. It made no effort prior to or at the time of entry to ascertain what the repairs consisted of or what the correct dutiable value of the merchandise was. Had it not been for the observation of a customs official who happened to notice the railway cars, the appraiser would have been deceived and the revenue defrauded. *H. Galland & Co.* v. *United States,* 17 C. C. P. A. (Customs) 51, T. D. 43337; *A. N. Deringer, Inc.* v. *United States,* 42 C. C. P. A. (Customs) 28, C. A. D. 565. A petitioner is under a duty to inform himself as to the correctness of his representations, and a showing of indifference does not meet the requirements of the statute. *R. W. Gresham* v. *United States,* 27 C. C. P. A. (Customs) 106, C. A. D. 70; *Intra-Mar Transport Corp., Formerly Gondrand Transport Corp.* v. *United States,* 42 C. C. P. A. (Customs) 94, C. A. D. 578. In the instant case, an inquiry by the petitioner would have revealed the true facts. Where no such inquiry has been made, remission has

been denied. *United States* v. *H. S. Dorf & Co. of Pa., Inc., supra*; *United States* v. *Pacific Customs Brokerage Company, supra*. In the case last cited, the court said (p. 8):

There can be no question but that the principal had a personal knowledge of the true purchase price as also had the ultimate consignee, Mr. Desjardin. It would seem to us to be a reckless disregard for truth when the shipper and exporter gave to the broker a false valuation. Ignorance of the law, of course, is not to be considered. It seems to us to have been the duty of the broker to have consulted with the ultimate consignee. If he had done so and the consignee told the truth he would have been in possession of the true value.

\*　　\*　　\*　　\*　　\*　　\*　　\*

We find nothing in the entire record which could absolve the entry of the goods at wrong values when the correct prices were known by the principal for whom the broker acted. It is clear to us that appellee has failed to meet his statutory burden of proof \* \* \*.

Furthermore, in the instant case, the appraised values exceeded the entered values by more than 100 per centum. Under the statute, such entries are presumptively fraudulent, and a heavy burden rests upon the petitioner in order to rebut the presumption. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306; *United States* v. *D. Lisner & Co., Inc.*, 38 C. C. P. A. (Customs) 79, C. A. D. 443. In our view, the petitioner herein has failed to meet that burden. It made no inquiry of any kind as to the value of the merchandise. One of the railway's employees decided what was dutiable and made no effort to ascertain whether his conclusions were correct. There was no consultation with anyone regarding value, nor was there anything on the invoices which would indicate what work was actually done or what materials were furnished in Canada. The testimony of the witnesses that they acted in good faith does not constitute sufficient evidence to establish that fact. *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507.

For the reasons stated, the petition is denied. Judgment will be rendered accordingly.